401 F.2d 35
 UNITED STATES of America, Plaintiff-Appellee,
v.
Salvatore GUAJARDO-MELENDEZ, also known as Guadalupe Santoya, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mario Moises ALMAREZ-MEDINA, also known as Mario Moises Almarez, also known as Ramon Tjerina, also known as Guillermo Hernandez, Defendant-Appellant.
 No. 16335.
 No. 16336.
 United States Court of Appeals Seventh Circuit.
 August 9, 1968.
 
 Terence MacCarthy, Director, Federal Defender Program, Richard S. Ewing, Chicago, Ill., for appellants.
 Thomas A. Foran, U. S. Atty., Lawrence Joseph Cohen, Asst. U. S. Atty., Edward V. Hanrahan, U. S. Atty., Chicago, Ill., John Peter Lulinski, Gerald M. Werksman, Asst. U. S. Attys., of counsel, for appellee.
 Before SCHNACKENBERG, SWYGERT and FAIRCHILD, Circuit Judges.
 SWYGERT, Circuit Judge.
 
 No. 16335
 
 1
 Salvatore Guajardo-Melendez, also known as Guadalupe Santoya, appeals from a judgment of conviction entered after a jury found him guilty of selling heroin in violation of 21 U.S.C. § 174. The indictment, containing one count, additionally named Jose Becera-Soto and Mario Moises Almarez-Medina, also known as Guillermo Hernandez. After the jury had been selected but before the introduction of any evidence, Soto was allowed to withdraw his plea of not guilty and to plead guilty instead. Thereafter, both Santoya and Hernandez were tried together. Before this court, Santoya urges two principal contentions for reversal. First, he argues that the district court erred in admitting into evidence a hearsay statement of codefendant Hernandez uttered out of the presence of Santoya. Second, he argues that reversible error occurred due to the actions of the assistant United States Attorney during the closing argument.
 
 
 2
 Four Federal Bureau of Narcotics' agents testified on behalf of the Government. According to the testimony of Agent Jordan, he met Soto at 16th and Blue Island in Chicago on the morning of November 1, 1966, from where they proceeded in the agent's car to 1808 Allport. Soto entered the building at that address and returned about five minutes later. Shortly thereafter, Santoya came out of the building, approached the agent's car, and conversed with Soto in Spanish. Agent Jordan testified that Santoya said, "`Hernandez told me to go pick up the stuff'." Santoya then walked away from the car toward 18th Street and was followed for about a block by another agent. A few minutes after Santoya left, Hernandez came out of the Allport building and entered Agent Jordan's car. According to the Government's testimony, Agent Jordan, Soto, and Hernandez proceeded to 16th and Halsted Streets where they parked the car. Santoya, who was waiting at the intersection, approached the car, opened his coat, showed the occupants a package he was carrying, and said, "`Here's the stuff.'"[1] Thereafter, Santoya went into a tavern on the corner and Agent Jordan proceeded to drive Soto and Hernandez to the Greyhound Bus Terminal in downtown Chicago. Other agents in the area followed Agent Jordan's car. No agents remained in the tavern to keep Santoya under surveillance.
 
 
 3
 When Agent Jordan, Soto, and Hernandez reached the terminal, they were joined in the car by Agent Azzam. Agent Azzam testified that while he was in the car, he engaged Hernandez in conversation. His testimony concerning this conversation follows:
 
 
 4
 By The Witness: [Agent Azzam]
 
 
 5
 A. I told them I wouldn't give up the money until I had the stuff or had seen it.
 
 
 6
 By Mr. McDonnell: [Assistant United States Attorney]
 
 
 7
 Q. What did they say to you?
 
 
 8
 The Court: What did who say? Identify the speaker.
 
 By Mr. McDonnell:
 
 9
 Q. Did Hernandez answer that?
 
 
 10
 A. Mr. Hernandez did answer, in turn.
 
 
 11
 Q. What did he say?
 
 
 12
 A. Hernandez told me everything was okay, the stuff was at a tavern on Halsted, and that their partner had control of it.
 
 
 13
 Q. Did he say who the partner was?
 
 
 14
 A. Yes, sir.
 
 
 15
 At this point, I feigned anger, saying, "What do you mean, partner? Who?"
 
 
 16
 He said, "He is a good guy. He is down at the bar on Halsted Street."
 
 
 17
 I then said, "[W]ho is he?"
 
 
 18
 And he said, "A guy named Santoya. You do not know him, but he is a good guy."
 
 
 19
 Agent Azzam and Soto then left the car and went into the terminal while Agent Jordan and Hernandez returned to the tavern at 16th and Halsted Streets. According to the testimony of several agents, Hernandez entered the tavern, conversed with Santoya, and returned to Agent Jordan's car with a package. Santoya remained in the tavern. Agent Jordan and Hernandez then went to another tavern. As soon as Agent Jordan determined that the contents of the package was heroin, Hernandez, Soto, and Santoya were arrested. At the time of his arrest, Santoya was still seated at the bar in the same tavern at 16th and Halsted.[2]
 
 
 20
 Santoya's first contention concerns Agent Azzam's hearsay testimony, repeating an alleged conversation with Hernandez in which the latter referred to Santoya as his "partner." Both Santoya and the Government rely on Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), to support their respective contentions concerning the effect of Agent Azzam's hearsay testimony. Santoya argues that the conversation was inadmissible against him because it was engaged in out of his presence. In addition, Santoya argues that the hearsay testimony, although properly admissible against Hernandez, did not advance the Government's case against that defendant; he urges, however, that the same testimony was incriminating as to him. Finally, Santoya argues that the district judge failed to give adequate cautionary instructions to limit the jury's consideration of the conversation to Hernandez.[3] In reply the Government argues that the testimony of the conversation was highly incriminatory against Hernandez and that the instructions were sufficiently explicit to protect Santoya. At the conclusion of the Government's argument on this point in its brief, the statement appears:
 
 
 21
 In order to reverse this conviction, the court must speculate that the jury, presumably composed of prudent and intelligent men, disregarded the court's instructions and their oaths. * * * Delli Paoli v. United States, 352 U.S. 232, 242 [77 S.Ct. 294] (1957); * * While this case was pending on appeal, the Supreme Court decided Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (May 20, 1968).[4] In Bruton the Supreme Court overruled its previous holding in Delli Paoli. The issue decided in Delli Paoli was that the trial court's "instructions to the jury provided petitioner with sufficient protection so that the admission of Whitley's [codefendant's] confession, strictly limited to use against Whitley, * * * [did not constitute] reversible error." Delli Paoli v. United States, 352 U.S. 232, 239, 77 S.Ct. 294, 298 (1957). In overruling Delli Paoli, the Court in Bruton rejected the basic premise upon which Delli Paoli rested — that in a joint trial, a jury could follow sufficiently clear instructions to disregard the inadmissible references to one defendant in a codefendant's otherwise admissible extrajudicial statement. Having determined that cautionary instructions however specific might not be followed by a jury, the Court could not sustain the encroachment on the sixth amendment right of confrontation which was present in Bruton. That encroachment arose because the extrajudicial statement of a codefendant which incriminated another defendant was admitted into evidence even though the codefendant did not take the stand.
 
 
 22
 Since Hernandez took the stand in his own behalf in the instant case, Santoya's counsel had the opportunity to cross-examine Hernandez, but he declined to do so. Therefore, the confrontation rationale of Bruton, although persuasive, would not seem to be literally applicable.[5]
 
 
 23
 But irrespective of the literal application of Bruton,[6] we believe that reversible error occurred in admitting Agent Azzam's hearsay testimony of his alleged conversation with Hernandez which incriminated Santoya. See United States v. Lyon, 397 F.2d 505 (7th Cir. 1968). This testimony added little to the Government's case against Hernandez. Even assuming that the fact that Hernandez had a partner was significant to the Government's nonconspiracy case against Hernandez, the identity of that partner was irrelevant as to Hernandez, but "deadly poison" as to Santoya. United States v. Gordon, 253 F.2d 177, 183 (7th Cir. 1958). Moreover, our reading of the record leads us to believe that the assistant United States Attorney should have known that the answer by Agent Azzam to his question could serve only an improper purpose — eliciting evidence which incriminated Santoya but which was inadmissible against him. The district judge's "warning" to the jury just prior to Agent Azzam's testimony was no warning at all, and his other cautionary instructions lacked sufficient specificity to cure the prejudicial effect of the testimony, even assuming, contrary to Bruton, that the jury could have followed more specific instructions. Finally, the other evidence against Santoya was far from overwhelming.
 
 
 24
 Under these circumstances, we believe that the district judge improperly allowed Agent Azzam to testify to that portion of Hernandez' extrajudicial statement which incriminated Santoya. As a consequence, Santoya was denied a fair trial.[7]
 
 No. 16336
 
 25
 Mario Moises Almarez-Medina, also known as Guillermo Hernandez, appeals from a judgment of conviction after a jury found him guilty, in a joint trial with Santoya, of violating 21 U.S.C. § 174. Before this court, Hernandez advances two principal contentions for reversal. First, he argues that reversible error occurred due to the conduct of the assistant United States Attorney during the closing argument. Second, he argues that if we conclude, as we have, that Santoya was denied a fair trial we must reach the same conclusion as to Hernandez. This result is inevitable, according to Hernandez, because the unfairness of Santoya's trial discredited him as a witness in the eyes of the jury, thereby denying Hernandez the support of the only witness who corroborated his testimony.
 
 
 26
 Hernandez focuses on several statements made by the assistant United States Attorney during his closing argument (after the closing arguments of both defendants) which Hernandez contends were prejudicial and improper. These allegedly improper statements follow seriatim. First, the assistant United States Attorney argued to the jury that the guilty plea of Soto was evidence of the guilt of Hernandez (and Santoya). Second, he argued that the failure of the defense to call Soto suggested that he would have supported the Government's theory of the case had he been called as a witness. Third, his statements that he "knew" that Soto, Hernandez, (and Santoya) were "large-scale narcotic peddlers." Fourth, his statement that Agent Jordan had testified that Soto had said that Hernandez (and Santoya) supplied him (Soto) with narcotics.
 
 
 27
 During his closing argument, an advocate is permitted to make any comments which are supported by the evidence of record in the case. An advocate is likewise within the bounds of propriety in replying to an argument raised by his opposing advocate. United States v. Doyle, 234 F.2d 788 (7th Cir.), cert. denied, 352 U.S. 893, 77 S.Ct. 132, 1 L.Ed.2d 87 (1956).
 
 
 28
 These two principles dispose of Hernandez' challenge to three of the four statements of the assistant United States Attorney. First, the evidence introduced by the Government provided a foundation for the comments that Soto, Hernandez, (and Santoya) were large-scale narcotic peddlers. One of the agents testified that the sale price of the heroin was $8,000 but that the heroin could be sold for $50,000 "on the street to addicts." We believe that a transaction of this size allowed an argument to be made that the alleged participants were "large-scale peddlers."[8] Second, the assistant United States Attorney's argument that Soto's plea of guilty was evidence of the guilt of Hernandez (and Santoya) came only after both defense counsel had urged the jury to draw an inference of Hernandez' (and Santoya's) innocence from the fact that Soto alone had pleaded guilty. Having opened the subject by arguing about the effect of the guilty plea, defense counsel invited the Government counsel to advance his own argument in reply.[9]
 
 
 29
 Neither a basis in the evidence nor appropriate reply justified the assistant United States Attorney's other comment. There was no evidence that Soto had told Agent Jordan that Hernandez (and Santoya) were his source of narcotics supply. Thus, the assistant United States Attorney's gratuitous statement that Agent Jordan had so testified was untrue.[10] Although the Government concedes that the agent did not so testify, it attempts to dismiss the import of counsel's statement on the grounds that it was inadvertent, that Soto did in fact bring Jordan to Hernandez (and Santoya) to consummate the transaction, and that the court instructed the jury on four occasions to trust their own recollection and not that of counsel.
 
 
 30
 We believe that this statement was sufficiently prejudicial to necessitate a new trial. What the statement amounted to was "testimony" of an alleged hearsay statement of a guilty participant, Soto, that incriminated Hernandez (and Santoya) in illegal activities. This gratuitous statement was particularly damaging in that it conflicted with Hernandez' (and Santoya's) testimony that they were "innocent dupes" who were doing Soto a favor and were ignorant of the contents of the package which contained heroin. Since Soto did not testify at the trial, neither Hernandez (nor Santoya) could cross-examine him about the alleged statement attributed to him. As a consequence, Hernandez (and Santoya) were subjected to a denial of their sixth amendment right of confrontation which could not be cured by instructions to the jury. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (May 20, 1968). Moreover, the assistant United States Attorney's statement, coming as it did during his closing argument and lacking any evidentiary foundation in the testimony at the trial, made any attempt at confrontation or argumentative reply impossible. The Government argues that Hernandez (and Santoya) neither objected nor moved for a mistrial when the statement was made, thereby waiving their objection. The Government's waiver point is not well taken because the statement amounted to plain error "affecting substantial rights" under FED.R.CRIM.P. 52(b).
 
 
 31
 Hernandez' other contention is without merit.
 
 
 32
 The judgments of conviction in Numbers 16335 and 16336 are reversed, and the causes are remanded for new trials.
 
 
 
 Notes:
 
 
 [1]
 It was the contention of the defense that this meeting at 16th and Halsted Streets did not take place. Hernandez unequivocally denied stopping at this time. Santoya testified that it was possible that he approached the car, but he was "not positive about it."
 
 
 [2]
 Both Hernandez and Santoya testified that their involvement in the narcotics transaction was inadvertent as they were merely doing a friend, Soto, a favor at his request
 
 
 [3]
 At the beginning of Agent Azzam's testimony about his alleged conversation with Hernandez, Santoya's counsel objected "to this conversation being admitted against the defendant Melendez [Santoya]." This district judge responded, "With the same warning that I gave earlier to the jury, it may go in." The warning referred to was given the day before during the direct testimony of Agent Jordan, the first witness in the case. The warning follows:
 Well, I will advise them at this time that in the main, statements or conversations are admitted only as to people who made them or who were present, and I will instruct you more specifically as to that when I give the general instructions. But in the main, if one defendant says something out of the presence of another defendant, it is admitted, the statement that he made is admitted only as to the defendant making the statement.
 During his instructions to the jury at the end of the case, the district judge said:
 Statements made by one defendant to the agents who testified at the trial may be considered by you only in determining the guilt or innocence of that defendant, and may not be considered by you in determining the guilt or innocence of the other defendant.
 
 
 [4]
 In Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968), the Supreme Court held thatBruton applied retroactively because "the constitutional error presents a serious risk that the issue of guilt or innocence may not have been reliably determined." Id.
 
 
 [5]
 There is some question whether Santoya could have cross-examined Hernandez concerning his alleged extra-judicial statement. Although Hernandez testified at length, he was never asked nor did he mention any conversation with Agent Azzam in his direct testimony. Under the general rule that a witness' direct examination governs the scope of his cross-examination, United States v. Kramer, 355 F.2d 891, 900 (7th Cir. 1966); United States v. Spatuzza, 331 F.2d 214, 217 (7th Cir.), cert. denied, 379 U.S. 829, 85 S.Ct. 58, 13 L.Ed.2d 38 (1964), Santoya could have been prevented from cross-examining Hernandez concerning his alleged extrajudicial statement
 In addition, once Hernandez took the stand, he apparently waived his fifth amendment right not to be called as a witness against himself. But see United States v. Echeles, 352 F.2d 892, 897 (7th Cir. 1965). Thus Santoya, if he so desired, might have been able to recall Hernandez to the stand as a witness. But prior decisions (in this circuit), United States ex rel. Irwin v. Pate, 357 F.2d 911, 915 (7th Cir. 1966); United States v. Chase, 281 F.2d 225 (7th Cir. 1960); (and other circuits), United States v. Cardillo, 316 F.2d 606 (2d Cir.), cert. denied, 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed. 2d 55 (1963); Ziegler v. United States, 174 F.2d 439 (9th Cir.), cert. denied, 338 U.S. 822, 70 S.Ct. 68, 94 L.Ed. 499 (1949), as well as the writings of commentators, e. g., Carlson, Cross Examination of the Accused, 52 CORNELL L.Q. 705 (1967), seem to embrace the doctrine of a partial waiver of fifth amendment rights. Under this doctrine, Hernandez' failure on direct testimony to mention a conversation with Agent Azzam would have enabled him to interpose his fifth amendment right in response to any questions concerning his alleged conversation with Agent Azzam, whether asked by Santoya's counsel on cross-examination or after Henandez had been recalled as a witness.
 
 
 [6]
 In United States v. Bujese, 378 F.2d 719 (2d Cir. 1967), vacated and remanded, 392 U.S. 297, 88 S.Ct. 2064, 20 L. Ed.2d 1113 (1968), the Supreme Court remanded a case (strikingly similar to the instant one) for further consideration in light ofBruton. In Bujese a codefendant pleaded not guilty and took the stand to testify in his own behalf. On direct examination, he denied committing the crime he was charged with. On cross-examination, however, he confessed to the crime after the Government confronted him with his previously signed confession. The confession, which was introduced into evidence, implicated Bujese. Thereafter, Bujese called his codefendant as a defense witness. During this examination, the codefendant testified that the statement in his confession implicating Bujese was incorrect and that in fact Bujese had refused to take part in the crime. The Second Circuit affirmed Bujese's conviction, relying on the clarity of the district court's instruction on the codefendant's confession.
 
 
 [7]
 In view of our disposition of this case, we need not here consider Santoya's other contention concerning the improper conduct of the assistant United States Attorney during the closing argument. Some aspects of this contention, as it relates to Hernandez, will be discussed in No. 16336 which follows
 
 
 [8]
 In fact, counsel for Santoya himself referred to Soto as a "sophisticated narcotics peddler" during his closing argument
 
 
 [9]
 This rationale applies equally to Hernandez' objection to the assistant United States Attorney's comment on the failure of Hernandez (and Santoya) to call Soto as a witness
 
 
 [10]
 The assistant United States Attorney argued to the jury as follows:
 And you also heard the undercover agent, Hector Jordan, testify that he spoke to Soto. You also heard Agent Jordan say that Soto was going to bring him to Soto's supplier, * * * Santoya and Hernandez.