**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Theodore LAWLER, Defendant-Appellant.**

**No. 16758.**

United States Court of Appeals
Seventh Circuit.

July 10, 1969.

Rehearing Denied Aug. 26, 1969.

Jo-Anne F. Wolfson, Chicago, Ill., for appellant.

Thomas A. Foran, U. S. Atty., John L. Conlon, Asst. U. S. Atty., Chicago, Ill., for appellee, John Peter Lulinski, Michael B. Nash, Asst. U. S. Attys., of counsel.

Before KILEY, CUMMINGS and KERNER, Circuit Judges.

CUMMINGS, Circuit Judge.

In August 1967, defendant Theodore Lawler, also known as Mousey, was indicted for a March 22, 1967, sale of 73.-908 grams of heroin to Frank Corcoran in Chicago, in violation of Section 4705(a) of the Internal Revenue Code.[1] This Section, derived from the Harrison Act of 1914, provides:

> "It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary [of the Treasury] or his delegate." (26 U.S.C. § 4705(a).)

The defendant was found guilty after a jury trial and received a 10-year sentence. On appeal, his principal argument is that the evidence was not sufficient to sustain his conviction. He also argues that Section 4705(a) is unconstitutional, and that he was prejudiced by certain trial errors. We affirm.

---

1. The Government has abandoned the second Count of the indictment, charging a violation of 21 U.S.C. § 174. The constitutionality of that Section was recently upheld in United States v. Turner, 404 F.2d 782 (3d Cir. 1968), certiorari granted Turner v. United States, 395 U.S. 933, 89 S.Ct. 2001, 23 L.Ed.2d 448 and in Montgomery v. United States, 407 F.2d 1312 (9th Cir. 1969). We do not pass on that question.

*Sufficiency of the Evidence*

As noted, the indictment charged that Lawler sold heroin to Frank Corcoran, but the case was tried on the theory that Lawler caused Raymond (Red) Derucki to sell the heroin to Corcoran. The jury was so instructed, and under 18 U.S.C. § 2(b) Lawler could be guilty as a principal by causing Derucki to make the sale.

The evidence must of course be considered in the light most favorable to the Government. United States v. Atnip, 374 F.2d 720, 722 (7th Cir.1967). The evidence so considered showed that the Government arranged the sale through the use of informer Frank Corcoran.[2] On the afternoon of March 22, 1967, Corcoran received a telephone call from Derucki, apparently then in Lawler's flat. Government agent Janet then gave Corcoran $1150 to purchase heroin. Soon thereafter, Derucki picked up Corcoran at the White Castle Restaurant at North and Central Avenues in Chicago. In Derucki's car, Corcoran offered to purchase "one sixteenth" of heroin for $1150. Derucki said he would call Corcoran back that evening. Derucki then went to Lawler's apartment and remained there 15–20 minutes. Other government agents testified that Derucki had gone from Lawler's apartment to a nearby Walgreen Drug Store earlier that evening, made a purchase of lactose and returned to the apartment. Derucki telephoned Corcoran that evening and said the package was ready and to meet Derucki at Chicago and Leclaire Avenues.

When Corcoran left agent Janet's automobile that evening on Leclaire Avenue, he walked north while Lawler left his apartment at 821 Leclaire and walked south. Defendant Lawler came to Janet's car and said, "Are you Bob [Janet], Frank's [Corcoran's] partner?" Janet said "yes" and Lawler then said, "Well, I am just checking you out. Frank ought to be getting your package from Red [Derucki] about now." Janet asked Lawler how Lawler knew who Jan-

et was, and Lawler replied, "Well, Red [Derucki] had described you to me and he told me what kind of car you had." Derucki then emerged from 821 Leclaire and told Corcoran his package was behind the door at Mousey's [Lawler's] at 821 Leclaire. Inside the unlocked second door of the vestibule leading to the upstairs apartment occupied by the Lawlers, Corcoran found a brown coffee bag. He immediately gave it to agent Janet, and it was later found to contain 26% heroin and the balance lactose. Lawler appeared to be scrutinizing the neighborhood very carefully while outside his premises on the evening of March 22. He had also engaged in sidewalk conversations with Derucki.

Earlier that same afternoon, government agents had seen Lawler emerge from his apartment house and drive off, returning a couple of hours later with a partly full brown paper bag and a black shirt box. One of the agents, Meyer, testified that this bag resembled the one containing heroin left behind Lawler's door and picked up by Corcoran that night. Mrs. Lawler purchased a new car the next day, depositing $950 in cash.

The Government's theory was that Derucki was Lawler's agent. On this theory, the evidence supports the charge that there was an illicit sale from Lawler to Corcoran. The conversation between Lawler and Janet would support the jury's verdict that Lawler was actually Derucki's principal. Furthermore, the jury could believe that the bag Lawler carried into his apartment house on the afternoon of March 22 was the same one in which the heroin sold to Corcoran was contained.

Two cases from this Court support Lawler's conviction. Thus in United States v. Wright, 309 F.2d 735 (7th Cir.1962), certiorari denied 372 U. S. 929, 83 S.Ct. 873, 9 L.Ed.2d 733, Judge Swygert observed that it was unnecessary that anyone actually see the defendant handle heroin. He stated that

---

2. There is no claim of entrapment.

the jury was entitled to infer from the defendant's control over the property in which the heroin was concealed and contemporaneous statements evidencing an awareness of the presence of the narcotics that he was guilty of participating in a sale of the heroin. Similarly here, the jury had before it evidence tending to show that Derucki arranged the sale from Lawler's apartment, that Lawler brought a brown sack into the apartment, that Derucki thereafter left Lawler's apartment and returned with lactose, that Lawler evidenced a knowledge of the transfer of a similar sack to Corcoran that evening, and that the sack transferred was found to contain heroin cut with lactose. From this the jury would be well warranted in inferring that Lawler had procured the narcotics and masterminded the sale.

In United States v. Garelli, 333 F.2d 649 (7th Cir.1964), certiorari denied, 380 U.S. 917, 85 S.Ct. 904, 13 L.Ed.2d 801, defendant Leonard's conviction for violation of Section 4705(a) was sustained on the basis of evidence tending to show that he was aware of the plans of the other defendants and operated as a lookout during the sale. Lawler's connection with the sale in the present case was more continuous and direct than was Leonard's.

Defendant especially relies on four cases. However, United States v. Raysor, 294 F.2d 563 (3d Cir.1961), turned on a variance between the indictment and proof and was not an insufficiency of evidence case. In Panci v. United States, 256 F.2d 308 (5th Cir.1958), the evidence was deficient because "no one testified that the brown paper bag given Giardina by defendant [Panci] had narcotics in it when it was given to him" (at p. 312), and Panci was not otherwise implicated. Unlike the *Panci* situation, Lawler himself told agent Janet that Corcoran was about to receive the package, later shown to contain heroin, from Derucki. From this and Lawler's actions during the time the transfer was taking place, and from agent Meyer's testimony, the jury could infer that Lawler had purchased the heroin that same afternoon and supplied some of it to Corcoran through Derucki.

In Ong Way Jong v. United States, 245 F.2d 392 (9th Cir.1957), no prima facie case of conspiracy having been made out, there was no competent evidence to convict the defendant of participating in the co-defendant's sale of narcotics to the agent. Here, on the other hand, the jury could consider Lawler's own statement to agent Janet as evidence of his participation in the sale by Derucki to Corcoran.

In Washington v. United States, 357 U.S. 348, 78 S.Ct. 1373, 2 L.Ed.2d 1368, the Supreme Court's *per curiam* reversal agreed with Judge Duffy's dissenting opinion in this Court that a vocal identification of defendant Fred Washington was deficient. United States v. Washington, 253 F.2d 913, 916–917 (7th Cir. 1958). The reversal does not support defendant's claim that the evidence here was insufficient to find him guilty.

*Constitutionality of Statute*

■■■■ Defendant first attacks the constitutionality of Section 4705(a) on the ground that it "bears no reasonable relation to the exercise of the taxing authority conferred on Congress by the Constitution." Twice the Supreme Court has rejected such a constitutional attack. Nigro v. United States, 276 U.S. 332, 48 S.Ct. 388, 72 L.Ed. 600; United States v. Doremus, 249 U.S. 86, 39 S.Ct. 214, 63 L.Ed. 493. To avoid those decisions, defendant asserts that in 1956 Congress declared heroin contraband (18 U.S.C. § 1402), so that no legitimate revenue-collection purpose remains by which to justify the application of this taxing statute to heroin. The defendant acknowledges that such an argument has been recently rejected as "frivolous" by two Courts of Appeals (Roy v. United States, 123 U.S.App.D.C. 32, 356 F.2d 785 (1965); Moore v. United States, 337 F.2d 350 (8th Cir.1964), certiorari denied, 379 U.S. 994, 85 S.Ct. 712, 13 L. Ed.2d 614), evidently because Section

1402 of the Criminal Code by its express terms requires only the surrender of heroin lawfully accumulated prior to 1956. United States v. Contrades, 196 F.Supp. 803, 808–809 (D. Hawaii 1961).[3] In any event, even if we were to read Section 1402 as declaring all possession of heroin illegal, as the Supreme Court has recently noted, "the unlawfulness of an activity does not prevent its taxation." Marchetti v. United States, 390 U.S. 39, 44, 88 S.Ct. 697, 700, 19 L.Ed.2d 889.

■ Defendant's second constitutional argument is that Section 4705(a) violates his privilege against self-incrimination. The same argument was recently rejected in United States v. Minor, 398 F.2d 511 (2d Cir.1968), certiorari granted, 395 U.S. 932, 89 S.Ct. 2000, 23 L.Ed.2d 447, in a well reasoned opinion of Judge Kaufman. As pointed out there, the statute only prohibits the sale of narcotics to a purchaser who has not obtained an order form from the Treasury Department. Despite the serious hazard of self-incrimination to which the purchaser may be exposed in complying with such a requirement (see Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57), a seller in Lawler's position may not complain of a theoretical violation of the purchaser's rights. Defendant has not brought to the Court's attention any regulations which would require the seller of narcotics to participate in or insure his own incrimination through the order form requirement, but to the extent that any regulation might jeopardize the constitutionality of Section 4705(a) the regulation would have to give way in order that the statute be saved. Cf. Leary v.

United States, 395 U.S. 6, 24–25, 89 S.Ct. 1532, 23 L.Ed.2d 57.

*Cross-Examination of Frank Corcoran*

■ Relying upon Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956, and United States v. Garafolo, 396 F.2d 952 (7th Cir.1968) (per curiam), defendant argues that there should be a reversal because the district court did not permit inquiry as to where informer Corcoran was working at the time of trial. In view of the extensive cross-examination of Corcoran permitted defendant's counsel and the fact that the bulk of the testimony damaging to Lawler was presented by the narcotics agents, we hold that on the facts of the present case defendant suffered no prejudicial denial of the right to confrontation and effective cross-examination.[4]

■ Defendant also urges that Corcoran's arms should have been displayed to the jurors so that the defense could impeach Corcoran's assertion that he no longer used narcotics. However, this was a collateral matter, and it was well within the trial court's discretion to curtail cross-examination to this extent. United States v. Bender, 218 F.2d 869, 873–874 (7th Cir.1955), certiorari denied, Bender v. United States, 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253.

*Admissibility of Conversation Between Derucki and Druggist and Correctness of Instruction Thereon*

■ Narcotics agent Young testified that at 7:00 p.m. on March 22, 1967, Derucki entered a Walgreen Drug Store at Laramie and Chicago Avenues and Young followed him inside. Young said he could hear the ensuing conversation between Derucki and the druggist. Defendant objected to the relation of the

---

3. In light of the statutory language "Any heroin lawfully possessed prior to the effective date of this Act should be surrendered to the Secretary of the Treasury * * *", we agree with the Government that the footnote in Harris v. United States, 359 U.S. 19, 22, 79 S.Ct. 560, 3 L.Ed.2d 597, on which defendant relies, does not require that Section 1402 be interpreted as declaring all heroin contraband for purposes of the revenue statutes.

4. We place no special reliance on the unsubstantiated reference to the possible danger to the witness's safety. See United States v. Palermo, 410 F.2d 468 (7th Cir. 1969).

conversation on relevancy grounds and on the ground that the conversation took place outside of the presence of the defendant, who was not charged with conspiracy. The Government successfully contended that the evidence was relevant and in furtherance of the already shown joint venture relationship between Lawler and Derucki. Thereupon, Young was permitted to testify that Derucki requested milk sugar and was advised that the store did not carry it, but did carry lactose, and that Derucki said he would take a pound of lactose.

In asserting error with respect to the receipt of this evidence, defendant has cited Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, and United States v. Guajardo-Melendez, 401 F.2d 35 (7th Cir.1968). Those cases held that the admission of a co-defendant's extrajudicial confession implicating the defendant constituted a denial of the defendant's constitutional right to confront his accusers and cross-examine them. But Bruton does not suggest that every act and word of a conspirator in furtherance of the conspiracy must be considered inadmissible against his co-conspirators. It was the prejudice of the unchallengeable accusation by an unavailable witness or one not subject to cross-examination with which Bruton was concerned. Here Derucki made no reference to Lawler, and his statements to the druggist had no independent value in identifying Lawler as a co-conspirator. The purchase of lactose constituted a neutral act in furtherance of the conspiracy which had already been established prima facie by the testimony of the agents. Therefore Bruton and cases construing it have no application here. See United States v. Lyon, 397 F.2d 505, 509 (7th Cir.1968). Here the district court applied the well-recognized exception to the hearsay rule for declarations of a co-conspirator in furtherance of a conspiracy and instructed the jury that they could not consider this conversation against defendant unless they found beyond a reasonable doubt that there was a common plan or design between Derucki and Lawler to sell heroin. Such an instruction was proper and constituted an adequate safeguard in this setting. United States v. Bernard, 287 F.2d 715 (7th Cir.1961), certiorari denied, 366 U.S. 961, 81 S.Ct. 1921, 6 L.Ed.2d 1253; United States v. Ragland, 375 F. 2d 471, 478–479 (2d Cir.1967).

*Closing Argument of the Prosecution*

Finally, the defendant assails the following passage from the Assistant United States Attorney's closing argument:

"The defense raises this red herring out about Raymond Derucki and says, 'excuse our laxity, because this man was available for us, we just never looked for him.' And why didn't they? Because of the fact that they knew that he wouldn't have been able to have testified to anything. If he had ever taken the stand, he would have taken the Fifth Amendment."

Although defendant's counsel made no objection at the time, it is now urged that these remarks placed before the jury facts not in evidence and indirectly commented on Lawler's own privilege not to take the stand. If meritorious, such error could be recognized as a ground for reversal under Fed.R.Crim.P. 52(b). United States v. Guajardo-Melendez, 401 F.2d 35, 41 (7th Cir.1968).

■■ ■■ Our examination of the transcript shows that the Assistant United States Attorney was answering defense counsel's argument that defendant was unable to obtain Derucki as a witness. In response, the prosecutor was pointing out that defendant did not subpoena Derucki because he knew Derucki would take the Fifth Amendment.[5] As noted in *Guajardo-Melendez*, an advocate is of course normally permitted considerable latitude in replying to his opponent's arguments (401 F.2d at p. 40). Considering the prosecutor's remarks as a whole, the portion now

5. The prediction was probably accurate, for Derucki subsequently pled guilty to a later indictment based on this sale.

claimed to be prejudicial appears at worst to be over-zealous advocacy rather than reversible misconduct. It was not so prejudicial as to constitute plain error. United States v. Achilli, 234 F.2d 797, 802 (7th Cir. 1956), affirmed, 353 U.S. 373, 77 S.Ct. 995, 1 L.Ed.2d 918.

Jo-Anne F. Wolfson of the Illinois Bar represented defendant below and has served with distinction as his appointed counsel in this Court. She has vigorously presented his contentions. The Court is appreciative of her services.

Affirmed.