**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Richard Steven SKELLEY, Defendant-Appellant.**

No. 73–1863.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 24, 1974.

Decided June 7, 1974.

As Amended June 19, 1974.

Certiorari Denied Dec. 9, 1974.
See 95 S.Ct. 629.

448

Fred L. Hubbard, Danville, Ill., for defendant-appellant.

Henry A. Schwarz, U. S. Atty., E. St. Louis, Ill., Warren White, Asst. U. S. Atty., Danville, Ill., for plaintiff-appellee.

Before KILEY, Senior Circuit Judge, CUMMINGS, Circuit Judge, and HOFFMAN, Senior District Judge.[*]

JULIUS J. HOFFMAN, Senior District Judge.

Defendant appeals from a judgment of conviction for unlawful possession of counterfeit obligations of the United States, 18 U.S.C. § 472. Finding no prejudicial error, we affirm.

Through his court-appointed counsel, defendant relies upon six asserted errors of the district court: (1) a 72-day delay between issuance of the federal warrant for defendant's arrest and his subsequent arrest and arraignment, during which period he was jailed on a related state charge; (2) the admission into evidence of the counterfeit money, allegedly without a proper foundation that the bills were in the same condition—and of the same color—as when seized from defendant; (3) a claimed variance caused by the transposition of two digits in the serial numbers of the counterfeit bills; (4) allegedly prejudicial argument by the United States attorney inviting the jury, without a foundation in expert testimony, to appraise the probability of obtaining fingerprints from a leather wallet; (5) additional allegedly prejudicial argument by the prosecutor, urging the credibility of a witness' prior inconsistent statement which had been admitted to impeach his current testimony and not to prove the truth of the matter asserted; and (6) allegedly improper comment in the prosecutor's summation upon defendant's refusal to answer certain questions without consulting his attorney.[1]

*Delay in Arraignment.* Defendant's argument concerning the alleged delay in "arraignment"[2] does not involve the familiar principle that a confession is inadmissible if obtained during detention for an unreasonable period of time between the arrest and the prisoner's appearance before a magistrate. See Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957); McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943); 18 U.S.C. § 3501 (1968). Here no confession was made.

Nor does the case present the question of what remedy, if any, beyond exclusion of confessions, might be appropriate for

---

[*] Senior District Judge Julius J. Hoffman of the Northern District of Illinois is sitting by designation.

[1.] In the district court, defendant had moved to suppress all the evidence, including the counterfeit bills, obtained in a search of his automobile after his arrest. While driving in the wrong lane, defendant had been stopped by a state highway patrolman. He consented, both orally and by signing a written consent form, to the search of his car which produced certain drug paraphernalia as well as the counterfeit $20 Federal Reserve notes admitted into evidence. The district court denied this motion to suppress, rejecting defendant's claim that his consent was given while he was under the influence of drugs and was thus vitiated, and that without consent the search was unreasonable and unlawful. In argument to this Court, defendant has not pressed the claim that denial of this motion was error. In any event, the factual showing at the hearing below was insufficient to invalidate his consent. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

[2.] We understand defendant's use of the term "arraignment" to refer not to an appearance for the purpose of pleading to an indictment or information, as defined in Rule 10, Fed. R.Crim.Pro., but rather to the appearance before the magistrate, not for purposes of a plea, but to advise defendant of the complaint against him, of his right to counsel, and of his right to a preliminary examination, and to fix the conditions of bail, all as provided in Rule 5(c), Fed.R.Crim.Pro.

unreasonable federal detention prior to appearance before a magistrate, in violation of the command of Rule 5(a), Fed. R.Crim.Pro., directing the arresting officer to "take the arrested person without unnecessary delay" before a magistrate. The detention here was by the state, upon charges arising wholly under state law, for driving while under the influence of drugs, unlawful possession of drugs, and possession of hypodermic syringes. After hearing, the district judge found nothing to suggest that this imprisonment was in any way attributable to federal authority, through collusion or otherwise. See United States v. Romano, 482 F.2d 1183, 1190–1191 (5th Cir. 1973); United States v. Moriarty, 375 F.2d 901 (7th Cir. 1967), cert. denied 388 U.S. 911, 87 S.Ct. 2116, 18 L. Ed.2d 1350 (1967). The defendant would not have gained his liberty by being admitted to bail by a magistrate upon the federal charge, and the supposed delay did nothing to prolong his detention.

The arrest on state charges was made by state officers on January 21, 1973 (a Sunday), and defendant was arraigned the next day on those state charges before the Circuit Court of Effingham County, Illinois, and was detained for want of bail in the county jail. The counterfeit Federal Reserve notes found in defendant's car were delivered to an agent of the United States Secret Service, who swore out a federal complaint on January 29, 1973. A warrant for defendant's arrest on this charge was issued the same day, and a federal detainer was lodged with the state officials. When defendant was released from state custody on April 11, 1973, upon dismissal or imminent dismissal of the state charges, he was immediately arrested on the outstanding federal warrant and taken before a federal magistrate who appointed counsel to represent him.

■ Nothing in this course of events violates either of the objectives of the prohibition against unreasonable delay between the arrest and the appearance before a magistrate. No confession was elicited during a period of coercive detention, and the detention itself was a result of pending state charges. Even if the detention were somehow attributable to the pendency of federal charges, on a supposition finding no support in the facts, defendant does not argue that he was thereby unlawfully deprived of his liberty in view of his inability to make bail, or that the necessary remedy for prolonged pre-hearing detention is dismissal of the substantive charge even though no prejudice appears. His argument is rather that he was prejudiced because the delay in arresting him under the federal warrant operated to delay the appointment of counsel to defend against the federal charge, and allowed the federal authorities to complete their investigation before defendant's counsel could begin. In this interim, the federal officers obtained a statement, incriminating defendant, from one of his associates.

■ On analysis, defendant is complaining not about any delay between arrest and the magistrate appearance, but about delay in the arrest itself, which would have set the wheels in motion to provide him with defense counsel for the federal charge. A similar claim was rejected by the Supreme Court in United States v. Hoffa, 385 U.S. 293, 310, 87 S. Ct. 408, 17 L.Ed.2d 374 (1966). There defendant complained that the federal authorities' delay in arresting him impaired his right to counsel under the Fifth Amendment, since it permitted the officers to interrogate the defendant without the presence of his lawyer, and that the defendant's statements thus procured were inadmissible. The Court declared: "There is no constitutional right to be arrested. * * * Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction." 385 U. S. 310. For the same reasons, in this case the government had no duty to ar-

rest defendant, and provide him with counsel, before continuing its investigation. See United States v. Palazzo, 488 F.2d 942, 948 (5th Cir. 1974) ; Koran v. United States, 469 F.2d 1071 (5th Cir. 1972). The fact that he was otherwise in custody did not curtail the investigatory power. "When an individual is in custody on probable cause, the police may, of course, seek out evidence in the field to be used at trial against him." Miranda v. Arizona, 384 U.S. 436, 477, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694 (1966).

 *Condition of the $20 Bills.* In his second assignment of error, defendant claims that the twenty-seven counterfeit $20 bills were improperly admitted into evidence over his objection that no proper foundation had been laid in the absence of evidence that the bills were in substantially the same condition when offered as when they were first seized. Of course, when a tangible object is offered into evidence to prove its quality, character, or condition at the time of an earlier occurrence in issue, the article is relevant and competent only if its condition is substantially unchanged, so that its present condition fairly represents the past condition. See McCormick, Evidence, § 212 (2d ed. 1972) ; 7 Wigmore, Evidence § 2129 (3d ed. 1940). But changes in condition which "do not destroy the evidentiary value of the object" do not prevent its reception. Comment, Preconditions for Admission of Demonstrative Evidence, 61 NW.U.L. Rev. 472, 484 (1966). Here the $20 bills partook of the nature of written documents, since their written content was itself evidence of their counterfeit character: the fact that multiple bills bore identical serial numbers established their lack of genuineness. They were adequately identified by government witnesses as the bills found in defendant's automobile. When a written document is properly identified as the same document previously examined, it is implicit in the identification that the content is the same, and nothing would be added by a direct negative answer to the question where its written contents have been altered or changed.

██ ██ Apart from their written content, defendant asserts that the bills when offered were blue in color, unlike genuine green currency, and argues that the jury might have considered this peculiar color as evidence that the defendant must have known that the bills were not genuine, and thus had the requisite guilty knowledge to make his possession a crime. For this purpose, he urges, the evidence was improper and prejudicial in the absence of a foundation showing that the bills were the same color as when they were seized. While a possible change in color would affect the probative value of the bills on this issue of intent, no change in color could destroy the relevance of the bills to show their counterfeit character from the identity of serial numbers, and their competence as evidence for this purpose is unimpaired by the unexcluded possibility of a change in color. In such a situation, when offered evidence bears on two issues, and a proper foundation has been laid as to one of those issues, the evidence is admissible over a general objection. See McCormick, Evidence, § 59 (2d ed. 1972). Here the evidence disclosed that the bills had been subjected to tests and analysis in the process of examining them for fingerprints. Upon appropriate and specific request, the trial judge might have given the jury a cautionary and limiting instruction to forestall any prejudicial inference that the color of the bills remained unchanged

3. Defendant raised the same objection to the admission into evidence of the wallet in which the counterfeit bills were found, and of the consent-to-search form which he signed, asserting as to both that no adequate foundation was laid without evidence that they were still in their original condition.

Both were fully identified. As to the wallet, defendant offers no suggestion of any change in condition which might have affected its limited relevancy. As to the written consent, the authentication was sufficient to support admission. Accordingly, we find no error in the admission of either item.

through these tests. No such request was made, and the general objection that no proper foundation had been laid was correctly overruled.[3]

*Variance in Serial Numbers.* Over defendant's objection, twenty-seven counterfeit $20 Federal Reserve notes were admitted into evidence. Except for serial numbers, the bills were identical. All purported to be notes drawn on the Federal Reserve Bank of Philadelphia, Series of 1969, Check Letter H., Face Plate No. 88, and Back Plate No. 120. Ten fictitious serial numbers were also identical except that two digits were transposed, so that some of the bills bore No. C20309642A while the remainder were numbered C 203 06942A. The indictment alleged that twenty-five of the bills bore the first number, and two the second. When they were offered into evidence, however, it appeared that the indictment's description was erroneous, reversing the quantities. Actually, twenty-five of the bills bore the serial number alleged to be the number appearing on the group of two, and only two contained the serial number described in the indictment as the number on the group of twenty-five. Upon defendant's objection to this variance, the district court granted the government's motion to strike the serial numbers from the indictment, and the numbers were physically obliterated by interlineation. Defendant's objections were overruled.

■ At the outset, it is clear and conceded that there was no necessity to set forth the fictitious serial numbers in the indictment, and that the indictment would have been legally sufficient without this descriptive surplusage. It is enough that the indictment sets forth "a plain, concise and definite written statement of the essential facts constituting the offense charged", Rule 7(c)(1), Fed.R.Crim.Pro., meeting "the requirement that the accused be informed of the charges against him, so that he can prepare his defense and so that he may be protected against a second prosecution for the same offense." United States v. Cassell, 452 F.2d 533, 536 (7th Cir. 1971). "Setting out the counterfeit bills or describing them by their fictitious serial numbers or otherwise would have afforded no real protection against a second prosecution for the same offense, because the number of identical facsimiles which might possibly be printed are limitless." Neville v. United States, 272 F.2d 414, 416 (5th Cir. 1959), cert. denied 362, 924, 80 S.Ct. 678, 4 L.Ed.2d 743 (1960).

In several early cases decided a century ago, it was nonetheless held that if the indictment does set forth the serial numbers by way of description, they must be proved, although surplusage, according to the letter of the charge. See United States v. Hall, 26 Fed.Cas.No. 15,283 p. 82 (Cir.Ct.Dist.Col.1832); United States v. Mason, 26 Fed.Cas.No. 15,736 p. 1192 (S.D.N.Y.1875). But see United States v. Howard, 26 Fed.Cas. No.15,403, p. 388 (C.C.Mass.1837) (Story, J.). This strict view was explained as merely an application of the prevailing rules against variance between pleading and proof, derived by analogy from the rules applicable in civil proceedings. United States v. Hardyman, 38 U.S. 176, 179, 10 L.Ed. 113 (1839). Today, such a requirement "may well be classed with what the late Justice Holmes designated as 'technicalities that were deemed vital a hundred or perhaps even fifty years ago.'" Simon v. United States, 78 F.2d 454, 455 (6th Cir. 1935). There the Sixth Circuit found no material or fatal variance when the indictment described the counterfeit bill as bearing Face Plate No. 1245 and the number on the bill offered into evidence was I–245. In Heisler v. United States, 394 F.2d 692 (9th Cir. 1968), the Ninth Circuit concluded the variance was not fatal in a bench trial when the indictment described the counterfeit note as a $20 bill and the evidence showed it to be a $10 bill. And in United States v. Taylor, 464 F.2d 240, 241–242 (2d Cir.

1972), the Second Circuit relegated to a footnote its rejection of the claim of variance when the indictment described the counterfeit bills as Treasury notes when the proof revealed them to be Federal Reserve notes. See also United States v. Cassell, 452 F.2d 533, 536 (7th Cir. 1971) (no variance when no proof was offered to show stolen Treasury checks were "genuine" as alleged in indictment). Cf. Graffi v. United States, 22 F.2d 593 (7th Cir. 1927).

■ Thus the deletion of the serial numbers did not impair the sufficiency of the indictment, and the clerical discrepancy between pleading and proof of the serial numbers did not amount to a fatal variance. Although the numbers were surplusage, unnecessary to plead or prove, defendant argues that it was error to implement these conclusions by the physical act of deleting the serial numbers from the indictment, marking them out. The argument builds upon the base of the constitutional guarantee of indictment by grand jury, as declared by the Fifth Amendment. To allow the prosecutor and court to amend the indictment, to change the nature or character of the crime charged by the grand jury, would be inconsistent with this guarantee. Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887). Extending the rule, courts have held that an indictment cannot be amended even with the consent of the defendant. See, e. g. Carney v. United States, 163 F.2d 784 (9th Cir. 1947), cert. denied, 332 U.S. 824, 68 S.Ct. 165, 92 L.Ed. 400 (1948). In deference to this principle, the Federal Rules of Criminal Procedure, while generally authorizing amendment of an information (Rule 7(c) ), provide only that "on motion of the defendant" the court may "strike surplusage from the indictment." Rule 7(d). The absence of specific authority for deletion of surplusage without defendant's consent has not been construed, however, to forbid the judge from instructing the jury to disregard descriptive surplusage in the indictment which varies from the proof

when the written indictment itself remains untouched. United States v. Edwards, 465 F.2d 943, 950 (9th Cir. 1972). Nor does the rule prohibit correction of obvious clerical or typographical errors in the indictment, to change the initial letter of defendant's patronymic from K (Kenny) to D (Denny). United States v. Denny, 165 F.2d 668 (7th Cir. 1947), cert. denied 333 U. S. 844, 68 S.Ct. 662, 92 L.Ed. 1127 (1948).

■ While the exceptions do not completely engulf the rule, we are not prepared to make a fetish of the prohibition against amendment of an indictment by holding that it is reversible error to interlineate fictitious serial numbers which are inaccurate solely because of the transposition of two digits in a ten digit string, which could have been omitted entirely from the indictment with no consequence, which need not be proved even if alleged, which the jury could have been instructed to ignore, which might have been corrected as typographical errors, which correctly describe some of the bills in evidence, and which are incorrect only with respect to whether the quantity of bills bearing one number or the other is twenty-five or two. Neither the nature nor the gravity of the offense is affected by the discrepancy. Under the circumstances, any technical error that might have been committed by touching pen to paper to alter the indictment itself, is wholly without substance, and could not have prejudiced defendant's rights. In United States v. Buble, 440 F.2d 405 (9th Cir. 1971), the trial court had not merely stricken inaccurate numbers from the indictment, but had permitted the substitution of different numbers, to correct an obvious error in the dates on which allegedly false tax returns had been filed. The Ninth Circuit found no prejudicial error, observing that the "indictment did not require amendments, so amendments did not prejudice the defendant. The variance in the proof

from the original indictment still could have permitted the case to go to the jury." 440 F.2d 406.

*Prejudicial Argument.* The remaining three grounds of asserted error all involve claims that the Assistant United States Attorney exceeded the bounds of propriety in his argument in summation. The first of these three arguments was provoked by defense counsel's own argument to the jury, suggesting that a reasonable doubt was raised by the government's admitted failure to examine for fingerprints the wallet containing the counterfeit bills. In response, the prosecutor sought to justify this failure to make a fingerprint examination by asserting that certain substances do not readily carry fingerprints, and by exhibiting the wallet to the jury as an invitation to the jurors to find, without the aid of expert testimony, that touching its leather surface would not leave fingerprints. Defendant immediately objected that the argument was outside the testimony, and now asserts that the error was not cured by the judge's instruction to the jury that the attorneys' remarks are not evidence in the case.

Through inference, the defense asked the jury to conclude that the government could have found defendant's fingerprints on the wallet if he had handled it, without a basis in expert testimony that the billfold's surface would carry such prints. The Assistant United State's Attorney responded in kind, asking the jury to draw the contrary inference. This Court has afforded some latitude to government counsel in replying to arguments advanced by the defense. In United States v. Achilli, 234 F.2d 797 (7th Cir. 1956), affirmed, 353 U.S. 373, 77 S.Ct. 995, 1 L.Ed.2d 918 (1957), as in this case, "Each party was arguing for an inference not supported by the record," (234 F.2d 802), and the opinion permits the government in argument "to make reply to that made by opposing counsel, and, in doing so, statements may be made which otherwise would be improper." 234 F.2d 802. See Lawn v. United States, 355 U.S. 339, 359–360 N.15, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958), United States v. Lawler, 413 F. 2d 622, 628 (7th Cir. 1969.) Under these principles, state courts have found no prejudicial error when the defense argues innocence based on the absence of fingerprints, and the prosecutor departs somewhat from the record by way of reply, to explain away their absence. See, for example, State v. Coleman, 441 S.W.2d 46, 54 (Mo.Sup.Ct.1969) ; State v. Varga, 66 Nev. 102, 117–120, 205 P.2d 803, 810–811 (1949). Under the trial court's instruction to the jury that the arguments of counsel do not constitute evidence, we are unable to conclude that defendant was prejudiced by this line of argument.

This limited tolerance of retaliatory argument also applies to defendant's second claimed error in the government's summation to the jury. The argument complained of was directed to a prior inconsistent statement which had been received in evidence solely for the purpose, as the jury was instructed, to impeach the in-court testimony of defendant's acquaintance which tended to exculpate defendant. In his closing argument counsel for defendant had urged the credibility of the witness' live testimony, and had argued that the prior inconsistent statement should be disregarded as self-serving. In reply, the government attorney argued that the prior statement was not self-serving, as the jurors would see upon reading it in the jury room, and that it established that the witness had lied in his testimony on the stand. Defendant submits that the prosecutor thus improperly argued that the prior statement was true, and that the jury could consider it as affirmative evidence of the facts it contained.

The orthodox view, relied on by defendant, has been much criticized for its "theoretical and artificial nicety" in the distinction between permitted use of

the statement to show that the witness lied in his oral testimony, and its prohibited use as evidence of the truth of the statement's contents. See 3A Wigmore, Evidence § 1018, p. 1007 (Chadbourn rev. 1970); United States v. DeSisto, 329 F.2d 929, 933 (2d Cir. 1964), cert. denied 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964). The artificiality of this fine line is exemplified by the prosecutor's dilemma in this case. Defense counsel had argued that the prior statement should be disregarded as incredible because of the witness' incentive to falsify at that time, and that the statement thus did not impair the credibility of the in-court testimony. To rebut the argument required the government attorney to argue in return that the witness had an equal incentive to tell the truth when giving the statement as when testifying on the stand. He thus attempted to shore up the credibility of the prior statement. It is unnecessary to decide whether he stepped over the line, supporting the credibility of the prior statement not merely to the degree necessary to destroy the in-court testimony, but to the extent of leading the jury to treat the statement as affirmative evidence. Defendant made no objection to the argument until the jury had returned its verdict, when he raised the point in his post-trial motion. Upon a timely objection, the trial court could have emphasized by repetition its instruction to the jury that the prior statement could be considered only for purposes of impeachment. If it could be said that any unwaived error remained, any impropriety in the argument must be viewed as harmless and technical, in view of the Supreme Court's proposed Federal Rules of Evidence 801(d)(1), which would make such prior inconsistent statements fully admissible as evidence of the truth of the facts contained.

Defendant's final attack on the Assistant United States Attorney's closing argument to the jury involves his reference to defendant's refusal during in-custody interrogation, to answer certain questions, after answering others, without advice of counsel. The evidence referred to was directly elicited by defendant's own attorney, in cross-examining the FBI agent who had conducted the interview. In response to the question whether defendant ever stated that he wanted an attorney present, the agent answered that when the questioning touched on the details of the "credit card and the things that [were] found in his possession, at that point he stated he would not like to make any further admissions without asking his attorney."

In his summation, counsel for the government acknowledged that it would have been unfair for him to bring out the fact that defendant had so declined, but stated that defendant had brought it up, and restated the substance of the response: " . . . once they started talking about counterfeit [4] he wanted to see his attorney."

Defendant submits that this comment on the exercise of his constitutional right to counsel operated to penalize him for availing himself of the protected privilege, and was prohibited by analogy to Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), forbidding comment on a defendant's refusal to take the stand.

■ Defendant made no objection to his comment at the time it was offered,

---

4. Since the counterfeit bills were found in the wallet with the credit card, it was within the limits of permissible inference in argument to assume, as the prosecutor did, that the "credit card and the things" in defendant's possession included the counterfeit bills within its reference. "During his closing argument, an advocate is permitted to make any comments which are supported by the evidence of record in the case." United States v. Guajardo-Melendez, 401 F.2d 35, 39–40 (7th Cir. 1968), See also United States v. Balistrieri, 403 F.2d 472, 480–481 (7th Cir. 1968).

however, nor did he mention the matter in his post-trial motion. Since the alleged error was raised for the first time in appeal to this Court, defendant is remitted to the "plain error" standard of Rule 52(b) in seeking reversal on this ground.

■ When interrogated while in custody, he had voluntarily waived his absolute right to refuse to answer any questions until he consulted a lawyer. His refusal to answer certain questions was disclosed to the jury by his own counsel's questioning, pursuing what was apparently a deliberate defense strategy to cast doubt on the voluntariness of the responses already given. No objection was raised at any state of the trial court proceedings. In the light of these repeated waivers, there is no justification for the invocation of our extraordinary power to reverse on the ground of plain error when the argument complained of did little more than repeat the substance of the evidence which defendant had intentionally adduced. Like an indirect comment on defendant's refusal to take the stand, the unwise comment here does not rise to the dignity of plain error, to require reversal when not brought to the attention of the trial court. See United States v. Lawler, 413 F.2d 622, 628 (7th Cir. 1969); Baker v. United States, 115 F.2d 533, 543–544 (8th Cir. 1940). See also United States v. Chamley, 376 F.2d 57, 60–61 (7th Cir. 1967). The Third Circuit's decision in United States ex rel. Macon v. Yeager, 476 F.2d 613 (3d Cir. 1973), is not to the contrary. There the prosecutor vigorously urged as evidence of guilt the fact that defendant had visited his lawyer's office the day after a street altercation, for which he was later arrested. Here the Assistant United States Attorney merely responded, perhaps over-zealously, to matters which defense counsel had chosen to put before the jury in a different light.

Affirmed.