William Brady TRIGG, Petitioner-Appellant,

v.

UNITED STATES of America, Respondent-Appellee.

No. 17587.

United States Court of Appeals, Seventh Circuit.

July 30, 1970.

John A. Waters, Chicago, Ill., for petitioner-appellant.

Thomas A. Foran, U. S. Atty., Kenneth R. Siegan, Asst. U. S. Atty., Chicago, Ill., for respondent-appellee; John Peter Lulinski, Jeffrey Cole, Michael B. Cohen, Asst. U. S. Attys., of counsel.

Before SWYGERT, Chief Judge, and CUMMINGS and KERNER, Circuit Judges.

CUMMINGS, Circuit Judge.

Petitioner and Weldon Burris were named in a six-count indictment charging narcotics offenses. Three counts alleged that they sold heroin to William B. Turnbou on July 20, July 29, and August 27, 1964, in Chicago, Illinois, without the requisite order blank, in violation of 26 U.S.C. § 4705(a). The other three counts charged them with knowing possession of heroin on the same occasions, in violation of 21 U.S.C. § 174. Trigg was convicted on all six counts after a jury trial. His conviction was affirmed on appeal, United States v. Trigg, 392 F.2d 860 (7th Cir. 1968), certiorari denied, 391 U.S. 961, 88 S.Ct. 1863, 20 L.Ed.2d 874.

The present appeal is from an order denying Trigg's petition for post-conviction relief under 28 U.S.C. § 2255, seeking vacation of his sentence. Petitioner offered four grounds for this relief in the district court. On appeal, however, he challenges primarily the introduction into evidence of rebuttal testimony offered by agent Turnbou relating to events allegedly occurring after termination of the joint venture which was the subject of the instant indictment.

The testimony at issue comprised the Government's rebuttal to the direct testimony of Trigg's codefendant, Weldon Burris, which was received into evidence without objection from either the Government or defendant Trigg's counsel.

Burris first denied any role in any of the alleged sales of narcotics to agent Turnbou. He testified that he acted as an unwitting errand boy for one Rupert Kelly, the Government's informer. He also disavowed any relations with Trigg pertaining to the sale of narcotics to Turnbou. According to Burris' recollection, Trigg was only involved in dealing in clothes and jewelry, not narcotics.

Burris undertook to narrate the occurrences of August 28, 1964, the day after the date of the final sale mentioned in the indictment. On that date, at the request of agent Turnbou, he arranged a meeting between Trigg and Turnbou in Trigg's automobile regarding a purchase of clothing by Turnbou. During that meeting, Turnbou inquired of Trigg concerning the possible purchase of narcotics. According to Burris, Trigg responded: "I don't know what the devil you are talking about," and "You got the wrong man. I don't deal in that stuff." Trigg then stopped the car and ordered Turnbou to "[g]et out."

After conclusion of the Government's cross-examination of Burris, both defendants rested. Trigg, who had been offered an opportunity to cross-examine his codefendant prior to the Government's cross-examination, declined to do so. He did not take the stand himself and did not call any witnesses in his own behalf but relied upon the exculpatory testimony given by Burris. In rebuttal of Burris' testimony, the prosecution recalled agent William Turnbou.

Turnbou described the events of August 28, 1964, and related a version of the meeting with Burris and Trigg which completely contradicted Burris' testimony. He testified that Burris called upon him to complete a sale of narcotics, stating that "Bill" [Trigg] was waiting and that Turnbou would get the drugs "after you see Bill." The two men then joined Trigg in his car and drove off. After driving around the block, Trigg reportedly drew a ballpoint pen and wrote on the glove compartment, looking at Turnbou, "[t]he man"

(indicating a narcotics agent). Trigg then returned to Burris' motel and told Turnbou to get out of the automobile. After indicating that he would call later, Trigg drove off.

During the course of this testimony, Trigg's counsel vigorously objected to the harmful implications of the evidence as to Trigg. In response to the claim by Trigg's counsel that the testimony of agent Turnbou was improper rebuttal, the prosecution argued that it was necessary to refute Burris' testimony and indicated that it was limited to that purpose. Additionally, the Government urged that the matters elicited would be admissible against Trigg as well as Burris in the event that a joint venture was established. The objections were overruled and the evidence admitted.

At the conclusion of the evidence, the parties submitted requests for instructions. The Government included an instruction on the joint venture theory. Each defendant's counsel lodged a general objection to the instruction and made several suggestions concerning the specific form of the instruction. None of the discussion was directed toward the special problems posed by the rebuttal testimony of agent Turnbou. On his direct appeal from the ensuing conviction, Trigg failed to challenge the evidentiary rulings or the instructions. Petitioner now raises these matters as violative of his right to confrontation under the Sixth Amendment and his Fifth Amendment right to Due Process.

*Petitioner's Sixth Amendment Claim*

Petitioner first argues that the hearsay statements of Burris related by Turnbou on rebuttal were inadmissible as to Trigg. Since these statements were contradictory to the story told by Burris on direct examination, petitioner claims he could not cross-examine Burris regarding the truth of those statements. This inability to cross-examine the source of the statements allegedly deprived Trigg of his right to confront the witness against him under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, and Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934. We find this contention without merit.

██ Regardless of the inadmissibility against Trigg of these hearsay statements,[1] petitioner suffered no infringement of his constitutional right to confront and cross-examine the witnesses against him. Misapplication of an exception to the hearsay rule which leads to the erroneous admission of evidence in a criminal trial "does not lead to the automatic conclusion that confrontation rights have been denied." California v. Green, 399 U.S. 149, 156, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489. Unlike Bruton and Douglas, Trigg was never barred from cross-examining the source of any incriminating hearsay evidence. See United States ex rel. Long v. Pate, 418 F.2d 1028, 1030 (7th Cir. 1970); Santoro v. United States, 402 F.2d 920, 923–924 (9th Cir. 1968); Harris v. Smith, 418 F.2d 899 (6th Cir. 1969); United States v. Marine, 413 F.2d 214,

1. The Government has attempted to avoid the application of *Bruton* and *Douglas* by arguing that the statements were admissible against Trigg as admissions of a coconspirator in furtherance of the conspiracy. This is erroneous for two reasons. First, the statements attributed to Burris occurred after completion of the substantive objects of the conspiracy insofar as it related to this indictment and were not in furtherance of the commission or concealment of any of those crimes charged. See United States v. Fellabaum, 408 F.2d 220, 227 (7th Cir. 1969), certiorari denied, 396 U.S. 858, 90

S.Ct. 125, 24 L.Ed.2d 109. In any event, equally applicable in this case is the restriction on the admissibility of rebuttal evidence. Since this transaction was raised by the defense and the testimony of agent Turnbou was introduced to contradict that of Burris, the evidence of the abortive attempt to transfer narcotics on August 28, 1964, was necessarily limited to impeaching the testimony of the defense and could not be considered to substantiate the Government's case in chief. See California v. Green, 399 U.S. 149 at notes 4, 5, 6, and 18, 90 S.Ct. 1930.

217–218 (7th Cir. 1969); Hawkins v. United States, 417 F.2d 1271, 1273 (5th Cir. 1969), certiorari denied, 397 U.S. 914, 90 S.Ct. 917, 25 L.Ed.2d 95; United States v. Weston, 417 F.2d 181, 187 (4th Cir. 1970), certiorari denied, 396 U.S. 1062, 90 S.Ct. 756, 24 L.Ed.2d 755. Petitioner initially waived cross-examination of his codefendant regarding these matters and rested his defense. After Turnbou's contradictory testimony, no effort was made to procure further testimony by Burris either in denial or explanation of the statements attributed to him. Petitioner's failure to examine his codefendant was the product of his own inaction and not the result of governmental improprieties.

Our conclusion that no constitutional infringement can be traced to Turnbou's testimony is bolstered by our scrutiny of the content and context of that testimony. Turnbou's rebuttal must be judged in light of the previous direct testimony of Burris who voluntarily raised the matter of the August 28 events. Burris' version of those events, of tenuous relevancy in any event, was introduced to support his claims that no joint venture for illicit sales existed between himself and Trigg, and that he was lacking any guilty knowledge or intent. Inquiry thus having been initiated by the defense without objection by Trigg, the Government was clearly entitled to impeach and contradict the exculpatory testimony which benefited Trigg equally with Burris. Burris' direct testimony had already placed Trigg as a participant in the contemplated deal. The prosecution introduced contradictory evidence as to the commercial purpose of the meeting held that day. Where Burris testified that the object of the meeting was the sale of clothing, Turnbou indicated that the commodity involved was "15 ounces" of illicit drugs. The necessary effect of the direct testimony of Turnbou regarding the deal was to inculpate Trigg, just as the necessary consequence of Burris' earlier statements had been to exculpate his codefendant. The only hearsay statements attributed to Burris which directly mentioned Trigg were either neutral or a necessary means of proving the illegal intent of that party. They were thus largely outside the coverage of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, or United States v. Guajardo-Melendez, 401 F.2d 35, 38–39 (7th Cir. 1968). See United States v. Rizzo, 418 F.2d 71, 80 (7th Cir. 1969); United States v. Lawler, 413 F.2d 622, 628 (7th Cir. 1969); United States v. Lipowitz, 407 F.2d 597, 602–603 (3d Cir. 1969), certiorari denied, 395 U.S. 946, 89 S.Ct. 2026, 23 L. Ed.2d 466; Santoro v. United States, 402 F.2d 920, 923 (9th Cir. 1968).

■ Nor does Section 2255 permit petitioner to redress any failure of the trial judge properly to limit the effect of Turnbou's rebuttal. In Sunal v. Large, 332 U.S. 174, 179, 67 S.Ct. 1588, 91 L.Ed. 1982, the Court indicated that Section 2255 did not create additional channels of review of "errors of law committed by the trial court" such as "errors in trial procedure which do not cross the jurisdictional line." As noted in Bruton v. United States, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, "instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. 'A defendant is entitled to a fair trial but not a perfect one.' Lutwak v. United States, 344 U.S. 604, 609, 73 S. Ct. 481, 97 L.Ed. 593." We find no basis for considering any error in this respect as other than waived by the failure to present it on direct appeal, despite the objections taken at the trial.

*Petitioner's Due Process Claim*

Petitioner also attacks the propriety of the procedures followed by the trial judge in submitting the evidence to the jury. Petitioner argues that Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, as well as Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, displays a constitutional distrust of a conditional submission of evidence of guilt to a jury accompanied by cautionary instructions. This principle, he urges, applies to the admission against one de-

fendant of statements of coconspirators where a common scheme or plan of design is being shown. In this case, he contends, the Constitution required an independent determination by the district judge that the evidence established beyond a reasonable doubt that a joint venture existed before the jury could even be allowed to do so. Defendant argues that the judge failed to make any such finding.

The trial judge made an independent determination concerning the reasonability of finding a joint venture when he determined to submit the case to the jury. We need not assume that the judge considered improper evidence in reaching that conclusion. Moreover, the independent factual determination required by Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, represents the balance of the interests not only of the defendant but also of the prosecution and the judicial system as a whole. The Supreme Court has never indicated that an independent factual determination of threshold questions must be made in every situation. In Bruton v. United States, 391 U.S. 123, 135, 88 S.Ct. 1620, the Court expressly recognized the viability of cautionary instructions as a means of balancing the conflicting interests.

■ At petitioner's trial, the judge submitted the issue of joint venture to the jury with an appropriate instruction. This was the correct procedure under the previous decisions of this Court and was, we believe, constitutionally permissible. *Cf.* United States v. Bernard, 287 F.2d 715 (7th Cir. 1961), certiorari denied, 366 U.S. 961, 81 S.Ct. 1921, 6 L.Ed.2d 1253; United States v. Lawler, 413 F.2d 622, 628 (7th Cir. 1969).

John A. Waters of the Chicago Bar was appointed to represent petitioner on this appeal. The Court is indeed grateful for his capable efforts on petitioner's behalf.

The denial of the Section 2255 petition is affirmed.