Ervin SIMMONS, Petitioner-Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

No. 18057.

United States Court of Appeals,
Seventh Circuit.

Jan. 29, 1971.

Cummings, Circuit Judge, dissented and filed opinion.

Ronald P. Alwin, Chicago, Ill., for petitioner-appellant.

William J. Bauer, U. S. Atty., Chicago, Ill., for respondent-appellee; John Peter Lulinski, Jeffrey Cole, William T. Huyck, Asst. U. S. Attys., of counsel, assisted by Gary L. Starkman, Ford Foundation Intern.

Before FAIRCHILD and CUMMINGS, Circuit Judges, and REYNOLDS, District Judge.[1]

FAIRCHILD, Circuit Judge.

This appeal involves a retroactive application of the *Bruton* rule.[2] Appellant Simmons' 1964 trial, for possession and sale of heroin, began as a joint trial with codefendant Troy Smith. The government introduced testimony that Smith, after arrest, had admitted

1. District Judge, Eastern District of Wisconsin, sitting by designation.

2. Bruton v. United States (1968), 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476.

the transaction between himself and an undercover agent, but said he had given the agent's money to Simmons and received from Simmons the narcotics which Smith asked Donaldson to hand to the agent. The court promptly instructed the jury that it must disregard the statement so far as Simmons was concerned. The parties do not question the adequacy of the instruction under pre-*Bruton* rules.

After the conclusion of the government's case, and denial of motions for directed verdict, Smith pleaded guilty. The government did not ask to reopen the case to have him testify, Simmons did not call Smith nor present any other evidence, and the jury convicted Simmons.

Simmons later brought a motion under 28 U.S.C. § 2255, relying on *Bruton*. The district court denied the motion and Simmons has appealed.

If Smith had continued as a defendant on trial and had not taken the stand, *Bruton* would require that Simmons' conviction be set aside unless the error were deemed harmless. *Bruton* is not limited to prospective application.[3]

The district court stated two reasons why the termination of Smith's status as a defendant on trial made *Bruton* inapplicable.

One was that after Smith's plea, Simmons could have called him as a witness, or have asked the court to call him as a court witness, and presumably would have been permitted to cross-examine him. The court acknowledged that if Smith had been called and refused to testify (either on account of some fear of incrimination not obviated by his plea, or contemptuously) a denial of Simmons' right of confrontation would have resulted.[4] It seems to us, however, that where an extrajudicial declaration is used under circumstances

such that the opportunity to cross-examine the declarant is essential to a defendant's right of confrontation, it must be the government's burden to produce the declarant. Mere availability, in the sense that defendant could have subpoenaed him, does not, in our opinion, suffice.

The government relies upon a statement in Trigg v. United States[5] that, "Petitioner's failure to examine his co-defendant was the product of his own inaction and not the result of governmental improprieties." Trigg's codefendant took the stand and testified in a manner favorable to both. Trigg waived cross-examination. An agent testified in rebuttal, giving a different version of the events disclosed by the codefendant and relating certain statements inadmissible against Trigg. Trigg's "inaction" was his failure to seek recall of his codefendant for cross-examination. We think the fact that Trigg's codefendant had already taken the stand is a sufficient distinction between the two situations.

The district court's second reason was that after Smith changed his plea the issue of his guilt was no longer before the jury and there was no legitimate reason for the jury to consider Smith's statement. "Rather, their attention was focused only on the guilt of Simmons and, in that much simpler context, an instruction to disregard certain information could be easily understood and followed." We must agree that the jury was not presented with the exact dilemma present in *Bruton*. But we think that there was still one of those "contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored."[6] At the time Smith's declarations were proved,

3. Roberts v. Russell (1968), 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100.

4. See Douglas v. Alabama (1965), 380 U.S. 415, 420, 85 S.Ct. 1074, 13 L.Ed.2d 934.

5. (7th Cir., 1970), 430 F.2d 372, 375.

6. *Bruton*, 391 U.S. p. 135, 88 S.Ct. p. 1627.

they constituted "the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, * * * deliberately spread before the jury in a joint trial."[7]

It is true that when the jury deliberated it was not then "being asked to perform the mental gymnastics of considering an incriminating statement against only one of two defendants in a joint trial."[8] On the other hand the guilty plea by Smith probably did not decrease the impressiveness of his statement concerning Simmons. On balance we conclude that assuming the jury questioned the weight of the other evidence of Simmons' guilt, there was a substantial risk Smith's declaration was weighed against him, and if it was, the lack of opportunity to cross-examine Smith impaired Simmons' right to confrontation.

This brings us to the final reason given by the district court for denial of the motion: Even if there were an abridgement of Simmons' right to confrontation, the error was harmless.

The proof tended to show that undercover agent Cook met Smith at about 6:30 p. m. in a tavern in the presence of Donaldson. Cook gave money to Smith for a quantity of heroin. Smith, accompanied by Donaldson, went elsewhere and gave the money to Simmons. At about 2:30 a. m., in a tavern a few blocks away, Simmons, in Donaldson's presence, delivered a package to Smith. Smith gave the package to Donaldson, who delivered it to Cook, waiting outside the tavern. The package contained heroin.

Another agent, Olivanti, corroborated the testimony of Cook and Donaldson concerning transactions between Cook and Smith and Cook and Donaldson. Donaldson, however, gave the only testimony implicating Simmons, and it was not corroborated except by the out of court statement of Smith, which the jury heard, but could not properly consider.

Donaldson's testimony was not contradicted. Simmons' counsel suggests that it is discredited by negative propositions. One was that Olivanti, although watching outside the first tavern, did not see Smith and Donaldson come out and meet Simmons, as related by Donaldson. Olivanti, however, did not know Smith, Donaldson, or Simmons at that time, and did testify that he saw people enter and leave the tavern while he watched. The other was that Cook and Olivanti were both outside the second tavern at 2:15 a. m. when, according to Donaldson, Simmons came in the front door, yet neither testified that he saw Simmons. Again, Olivanti did not know Simmons and Cook presumably did not; although there is no testimony that they saw unidentified people enter the second tavern. We do not think these propositions have much, if any, significance.

It seems highly probable that the jury would have believed Donaldson and convicted Simmons even without hearing of Smith's statement concerning him. The test, however, is that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."[9]

Donaldson testified that he did not know what was in the package which he said came from Simmons and which Donaldson gave Cook. The jury could very reasonably have thought he lied about his lack of guilty knowledge. He spent most of eight hours with Smith and said he went along to the second tavern "for the ride." The jury may well have suspected that his interest in the transaction was more than casual.

7. Id.

8. See Frazier v. Cupp (1969), 394 U.S. 731, 735, 89 S.Ct. 1420, 22 L.Ed.2d 684, distinguishing *Bruton*.

9. Chapman v. California (1967), 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705; Harrington v. California (1969), 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284.

He was arrested shortly after the arrest of Smith, but not prosecuted. The jury may well have considered him an accomplice and heeded the instruction to examine his testimony closely and weigh it with great care.

Although we think it probable the jury would have believed Donaldson without hearing of Smith's statement, we are unable to say beyond a reasonable doubt that it would have done so.

The judgment appealed from is reversed, and the cause remanded with directions to set aside the conviction and sentence.

CUMMINGS, Circuit Judge (dissenting).

After co-defendant Smith pled guilty, he could no longer claim the privilege against self-incrimination and was available for Simmons to cross-examine as a hostile witness. Therefore, Simmons was not deprived of his right to confront the witness against him under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476. As noted in California v. Greene, 399 U.S. 149, 162, 163, 90 S.Ct. 1930, 1937, 26 L.Ed.2d 489:

> "For where the declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if anything, support the conclusion that the admission of his out-of-court statements does not create a confrontation problem. * * * [N]o confrontation would have existed if Bruton had been able to cross-examine his co-defendant."

We have previously applied this rationale in United States v. Marine, 413 F.2d 214, 217 (7th Cir. 1969), certiorari denied, 396 U.S. 1001, 90 S.Ct. 550, 24 L.Ed.2d 493, and Trigg v. United States, 430 F.2d 372, 374–375 (7th Cir. 1970), certiorari denied, 400 U.S. 966, 91 S.Ct. 379, 27 L.Ed.2d 387. In Trigg, the fact that Trigg's co-defendant had already taken the stand was not the distinguishing element (cf. p. 891, *supra*). Rather, we found *Bruton* inapplicable because of the availability of the co-defendant for cross-examination after the Government's rebuttal testimony:

> "Petitioner's failure to examine his co-defendant was the product of his own inaction and not the result of governmental improprieties." 430 F. 2d at p. 375.

We should adhere to those rulings. The judgment should be affirmed.