**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert WILKINSON et al., Defendants-Appellants.**

**Nos. 74–1550, 74–1554 and 74–1555.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1974.

Decided March 31, 1975.

Rehearing Denied April 17, 1975.

---

Jerome Feldman, Chicago, Ill., for appellant.

James R. Thompson, U. S. Atty., Gary L. Starkman, Michael G. Berland, Asst. U. S. Attys., Chicago, Ill., for appellee.

Before HASTINGS, Senior Circuit Judge, SWYGERT and STEVENS, Circuit Judges.

HASTINGS, Senior Circuit Judge.

Defendants-appellants Robert Wilkinson, Harold W. Bean and Robert A. Byron were charged in a one-count indictment with possession of stolen goods in violation of Title 18, U.S.C. § 659.[1] After a trial by jury in the Northern District of Illinois,[2] each of the three named defendants was convicted on the single count as charged.[3] Judge McGarr imposed sentences of five years incarceration for Bean, three years for Byron and two years for Wilkinson. All sentences were made consecutive to unrelated sentences which defendants were then serving. Defendants have appealed their respective judgments of conviction and sentence.

The issues presented for review on this appeal are:

I. Whether the affidavit in support of the search warrant provided the magistrate with sufficient information to justify his finding of probable cause.

II. Whether the defendants were entitled to examine the grand jury minutes concerning their indictment to determine whether the indictment was based solely on hearsay, or, in the alternative, to have the trial court examine said minutes *in camera.*

III. Whether the trial court erred in admitting a statement of a defendant, made during the course of the offense, to prove motive for participation in the crime.

IV. Whether a joint venture instruction may be given where no conspiracy is charged.

V. Whether the sentences imposed within the statutory limits constituted cruel and unusual punishment where lesser sentences were given to other defendants in unrelated cases.

## THE UNDERLYING EVENTS

A concise statement of the relevant facts, though not materially disputed, considered in the light most favorable to the government, seems necessary upon which to predicate a resolution of the issues at hand.

As disclosed in an affidavit provided to the magistrate as the basis for the issuance of a search warrant, more specifically hereinafter referred to, an REA Express trailer, number REXZ206205, was stolen on March 10, 1973, from REA's Oshkosh, Wisconsin, terminal. At that time the trailer was loaded with cartons bearing REA labels with the word "Wisconsin" on some of the labels. The cartons contained, among other things, the merchandise listed in the grand jury indictment hereinabove set out. The trailer, with only a few items remaining in it, was recovered in Roseland, Illinois, on March 11, 1973, one day after the theft. The stolen cartons were

---

1. The indictment charged in substance that on or about March 11, 12, and 13, 1973, at Chicago, Illinois, defendants "unlawfully, wilfully and knowingly did have in their possession certain goods and chattels with a value in excess of one hundred dollars ($100.00) that is, certain toilet seats, plastic wrap, toys, electronic parts, tools, stereo equipment, and air compressors . ." It was further charged in substance that the goods had been unlawfully removed from a stolen REA Express trailer number REXZ206205; that the goods were moving as a part of an interstate shipment from various named shippers to various named consignees in 14 named states; and that defendants had the goods in their possession and knew them to be stolen.

2. Honorable Frank J. McGarr, District Judge, presiding.

3. The principal government witnesses, Kenneth Formanek and Zenon Szymanski, were charged in a separate indictment for their participation in the events underlying the instant case. Upon their pleas of guilty, Formanek was sentenced to three years incarceration and Szymanski received probation.

observed on the premises at 2847 South Kedzie, Chicago, Illinois, on March 12, 1973.

The evidence set out by the government in its brief, with transcript citations, clearly established beyond a reasonable doubt the following events:

Kenneth Formanek was self-employed with Kedzie Auto Body located at 2847 South Kedzie Avenue in Chicago. About noon on the first Monday in March 1973, defendants Bean and Wilkinson and one Falco entered the garage and all four men went to a tavern next door known as "Cavanaughs." Bean asked Formanek if he would be interested in making any money, and after receiving an affirmative reply told Formanek he would get back to him at a later date.

Bean next met with Formanek on the following Wednesday in the yard adjacent to the garage and asked Formanek if he could use his garage for a drop and how much it would cost. Formanek told Bean he would charge $1,000 and a percentage of the load. On the following Friday Bean and Wilkinson returned to Formanek's garage in the early evening. Bean told Formanek they might have a load that night and for him to be in the garage. Bean told Formanek he would let him know.

Formanek then told Zenon Szymanski, one of his employees, that a "hot" trailer would be dropped at the garage and that he was to be paid $1,000 and a percentage of the load. Formanek asked Szymanski if he would be interested in taking part for a split of the money. Later that night Bean called Formanek and said the deal was off for that night and he would get back to him the next day. On the following day, Saturday (March 10, 1973), about 7:00 p. m., Bean again telephoned Formanek and told him the load was on its way and would arrive in about three hours.

At about 5:00–6:00 a. m. Sunday (March 11, 1973), Wilkinson arrived with a truck. Formanek told him to back the truck up to the garage and pulled another truck in front of it to block the view from the street of the truck driven by Wilkinson. Formanek, Wilkinson and Szymanski then began to unload the trailer. They were joined in the unloading by Bean and Byron when they arrived at the garage.

Wilkinson, Byron, Bean, Formanek, Szymanski and another unidentified individual unloaded the trailer over a period of approximately two to three hours. The unloaded closed cartons were labeled, marked and contained merchandise generally as hereinabove described. The men all wore gloves while the trailer was being unloaded. Bean said they should get rid of the unloaded trailer. Wilkinson drove the trailer away followed by the unidentified individual who picked him up after the drop. Bean and Byron proceeded to look through some of the cartons that had been unloaded. Bean told Formanek there was supposed to be a shipment of liquid gold on the trailer.

The next day (Monday, March 12, 1973), about 10:30 a. m., Formanek and Falco went to Bean's apartment where Formanek asked Bean when he was going to get the stolen merchandise out of the garage and was told that Wilkinson was checking out a buyer. Formanek returned to Bean's apartment later that evening and met with Bean and Wilkinson. Formanek told Bean he believed the police were watching the garage. They agreed to meet at a restaurant the next day.

Formanek and Szymanski met Bean at the restaurant as agreed. Bean told Formanek he had gone to the garage and that a Chevrolet had pulled up behind him and it looked like the police. Bean asked Formanek what he was going to do. Formanek replied that he was going to leave town. He did so and went to Las Vegas, Nevada, where he was subsequently arrested.

Agent Terry Keiser of the Federal Bureau of Investigation, acting pursuant to a search warrant, entered the garage at 2847 South Kedzie on March 13, 1973. The garage was almost completely filled with cartons bearing REA shipping labels. Keiser and other agents loaded the

cartons found in the garage into a trailer. The merchandise was later inventoried and all except that retained for use as evidence at trial was sent on to the consignees.

We have not attempted to discuss all of the activities of FBI Agents Ward, Hayes and Ahels, or of the employees of the REA Express Company and representatives of the respective merchandise suppliers. As above stated, Formanek and Szymanski were the principal government witnesses. Defendants Bean, Byron and Wilkinson testified and each denied any participation in the theft of the REA truck and further denied having possession of any of the items discovered in Formanek's garage.

## THE SEARCH WARRANT

Defendants filed a "Motion to Quash Search Warrant and to Suppress Evidence Illegally Seized." They contend the search warrant was issued in violation of their Fourth Amendment rights in that the affidavit in support of the warrant was insufficient to establish probable cause for its issuance. The trial court held that there was probable cause. We agree.

Defendants contend the affidavit fails to come within the standards set out in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); and United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

A careful reading of the search warrant and the supporting affidavit of FBI Agent Frederick V. Ahels belies the adverse contentions of defendants. Affiant was advised by the REA Express Terminal Manager at Oshkosh, Wisconsin, as to information describing the REA trailer and its contents on the day it was stolen, and by an REA special agent of the recovery of the same trailer in Roseland, Illinois, the next day with all but a few small items of its contents missing. These informants had personal knowledge of the information given to affiant and were employees of REA.

Affiant was advised by another FBI Agent, John J. Oitzinger, that on March 12, 1973, Oitzinger received information from a confidential informant who had furnished reliable information in the past resulting in at least ten arrests and convictions and the recovery of over $50,000 worth of merchandise. Further, that this confidential informant saw various items of merchandise stored at the garage in question, with cartons, shipping labels and items of merchandise meeting the description given by others.

Affiant's own investigation determined the specific location of the auto repair shop in question. Affiant was advised by the REA Terminal Manager that the property stolen was valued at approximately $15,000. Affiant was further advised by FBI Agent Ward of the complete description of the premises located at 2847 South Kedzie, Chicago, based on Ward's personal knowledge and investigation.

The details in the supporting affidavit resulted in the issuance of the search warrant which appears to be a model of clarity and detailed specificity.

The decided cases are replete with recognition of the "two-pronged test of Aguilar," supra. Judge Swygert, writing for our court, succinctly stated it in United States v. Hood, 7 Cir., 422 F.2d 737, 739, cert. denied, 400 U.S. 820, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970): "In Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Supreme Court set forth explicit standards by which to test the reliability of informant hearsay used to establish probable cause. The magistrate to whom the application for a search warrant is presented 'must be informed of some of the underlying circumstances from which the informant concluded' that contraband was present on the premises and 'some of the underlying circumstances from which the officer concluded that the informant * * was "credible" or his information "relia-

ble",' 378 U.S. 108, 114, 84 S.Ct. 1509, 1514 . . . ."[4]

Our court recently had occasion on a rehearing *en banc* to deal with the question of the sufficiency of an affidavit in support of an arrest warrant to show probable cause for arrest. In a scholarly review of applicable law and the teaching of the two-pronged test in *Aguilar,* the court found support for the use of hearsay conveyed by a confidential informant which appears consistent with the holding in the case at bar. United States v. Carmichael, 7 Cir., 489 F.2d 983, 986–987 (1973). See also the *en banc* review in United States v. Wilson, 7 Cir., 479 F.2d 936 (1973).

■ In light of the foregoing and a common sense reading of the supporting affidavit as a whole, we have no difficulty in finding that both prongs of the test in *Aguilar* were satisfied. We hold that the affidavit in support of the search warrant provided the magistrate with sufficient information to justify his finding of probable cause. The trial court did not err in denying the motion to quash the search warrant and to suppress the evidence seized.

## THE GRAND JURY MINUTES

■ Defendants sought access to the grand jury minutes on three occasions in order to determine whether the grand jury might have based its indictment on hearsay or, in the alternative, for an *in camera* inspection by the trial court for the same purpose. None of the witnesses before the grand jury testified at the trial so that the Jencks Act did not require any disclosure.

Defendants rely on the rule set forth in United States v. Estepa, 2 Cir., 471 F.2d 1132 (1972), as authority for such disclosure. The trial court denied such motions for inspection and this is asserted as error. *Estepa* held in substance that an indictment based on hearsay

should be dismissed (1) where there was a high probability that with eyewitness testimony there would have been no indictment, or (2) if the grand jury was misled to believe it was receiving eyewitness testimony. *Id.* at 1137.[5]

In United States v. Annerino, 7 Cir., 495 F.2d 1159, 1162 (1974), we considered and distinguised *Estepa* on the ground that the facts in *Annerino* did not demonstrate either of the two circumstances which *Estepa* held would justify dismissal. Similarly, in the case at bar, there are no allegations that either of these two circumstances were present.

In *Annerino,* we held, *inter alia,* that indictments based on hearsay of the type used there, and similar in purport to that in the instant case, were not improper. *Id.* at 1161–1162. That this has become embedded into the law of our circuit is evidenced by prior holdings in United States v. Holmes, 7 Cir., 452 F.2d 249, 274 (1971), cert. denied, 405 U.S. 1016, 92 S.Ct. 1291, 31 L.Ed.2d 479 (1972); United States v. Aloisio, 7 Cir., 440 F.2d 705, 707, cert. denied, 404 U.S. 824, 92 S.Ct. 49, 30 L.Ed.2d 51 (1971); United States v. Daddano, 7 Cir., 432 F.2d 1119, 1125 (1970), cert. denied, 402 U.S. 905, 91 S.Ct. 1366, 28 L.Ed.2d 645 (1971); and United States v. Braico, 7 Cir., 422 F.2d 543, 545, cert. denied, 398 U.S. 912, 90 S.Ct. 1712, 26 L.Ed.2d 74 (1970). If more need be said, our cases have pointed out that in Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), "the Supreme Court categorically refused to invalidate an indictment based upon hearsay evidence under either the Fifth Amendment or its supervisory powers over federal courts." *Aloisio, supra,* 440 F.2d at 707.

■ In light of these authorities, we hold that defendants were neither entitled to examine the grand jury minutes for the purpose stated, nor, in the alternative, to have the trial court examine

---

4.  United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), appears to lessen the strictures of Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). See United States v. Unger, 7 Cir., 469 F.2d 1283, 1286 (1972), cert. denied, 411 U.S. 920, 93 S.Ct. 1546, 36 L.Ed.2d 313 (1973).

5.  Access to grand jury minutes was not an issue in *Estepa.*

the minutes *in camera.* To hold otherwise here would be an unwarranted invasion of the secrecy of grand jury deliberations. No authority has been cited even remotely suggesting any reason for requiring the trial court to engage in such a fishing expedition. There was no error in the trial court's denial of this procedure.

## ADMISSION OF STATEMENT IN EVIDENCE

As above set out, Formanek testified that immediately after the stolen merchandise was unloaded from the REA trailer and in the presence of defendant Byron, Bean said there was supposed to be a shipment of "liquid gold" on the trailer.

■ On brief, defendants assert that at a pretrial conference the trial judge instructed government counsel not to introduce any evidence that the trailer had originally contained a shipment of liquid gold. We have examined the record and there is no support for this assertion. What the record does show is that, prior to Formanek's testimony, the judge was informed of this statement of Bean to Formanek and the circumstances surrounding the statement. The court concluded that "if the witness so testifies, I will allow that testimony over objection."

■ In any event, such testimony was relevant to establish defendants' motive and intent and was not likely to be prejudicial. We find no error in the admission of this statement in evidence. Even if it could be said to be error, it was certainly harmless.

## JOINT VENTURE INSTRUCTION

Defendants claim that the government's tendered Instruction No. 31 on joint venture given by the court to the jury was error "in the absence of so charging them in the indictment." They rely upon the holding in Stirone v. Unit-

ed States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), to the effect that a defendant may not be tried on charges not made in the indictment against him. We have examined this instruction and find it to be a form instruction, E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 71.14 (2d ed. 1970). It is a correct and quite proper instruction.

Defendants' contention is misplaced. In a well-considered opinion authored by the late District Judge Mercer, United States v. Bernard, 7 Cir., 287 F.2d 715, 719–721, cert. denied, 366 U.S. 961, 81 S.Ct. 1921, 6 L.Ed.2d 1253 (1961), our court held that a joint venture instruction merely raises a question concerning the admissibility of evidence; a theory of proof rather than an offense. Where two or more persons are engaged in a joint enterprise or preconcerted action in the commission of a crime, the evidence is admissible upon a theory of the vicarious responsibility of all joint venturers for all acts done and declarations made by each in furtherance of the joint undertaking. It is not upon any theory of amendment of the substantive charge in the indictment. The question whether a common plan or design was proved beyond a reasonable doubt was properly submitted to the jury.[6] In *Bernard, supra,* we found no analogy between the ruling there and the case of Stirone v. United States, *supra.*

■ We find no error in the giving of this joint venture instruction.

## SENTENCING

The transcript of the evidence of defendants on direct examination shows that prior to the trial of this case defendant Bean had been convicted of robbery, attempted burglary, deceptive practices, interstate transportation of forged securities and extortion, over a period of several years.

Defendant Byron was convicted of theft of interstate shipment and is now

---

**6.** *Cf.* Trigg v. United States, 7 Cir., 430 F.2d 372, 376, cert. denied, 400 U.S. 966, 91 S.Ct. 379, 27 L.Ed.2d 387 (1970); United States v. Lawler, 7 Cir., 413 F.2d 622, 627–628 (1969), cert. denied, 396 U.S. 1046, 90 S.Ct. 698, 24 L.Ed.2d 691 (1970).

serving a term of five years in the Federal Penitentiary at Sandstone, Minnesota.

Defendant Wilkinson was convicted of attempted burglary in 1967 with Bean and is now serving time in an Illinois state penal institution. He also was given two years probation upon his plea of guilty to another charge.

Defendants contend that "in view of the existent and contemplated pardons of a variety of individuals in the so-called Watergate crimes, appellants' incarcerations and the length of their sentences constitute cruel and unusual punishment and violate their rights under the Fourteenth Amendment to the United States Constitution."

The relief which defendants request of this court on appeal is strange indeed and reads, "should this Court disagree with Appellants and deny them a reversal, Appellants would respectfully seek from this Court in harmony with prevailing conditions in the federal criminal justice system as described by them in their argument, relief in the nature of either a pardon or similar remedy within the power of this Court to grant, or, at the very least, a reduction of their respective sentences and an Order that such reduced sentences coincide with and be served concurrently with those already imposed in other matters."

▪ Defendants were represented at trial and on this appeal by the same privately retained counsel. It should be evident that this court does not possess the power of pardon or the power to change the term or manner of service of sentence.

▪ Here we need only state the general rule that "a sentence imposed by a federal district judge, if within statutory limits, is generally not subject to review." United States v. Tucker, 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). Further, that a trial court's sentence within the statutory limit "will not be disturbed on appeal except on a plain showing of gross abuse." United States v. Willard, 7 Cir., 445 F.2d 814, 816 (1971). A host of other cases to the same effect from this circuit need not be cited.

▪ Defendants' assertions to the contrary, it is frivolous to suggest that gross abuse of discretion by the trial court can be shown by comparing the sentences here to the treatment of those associated with Watergate.

Consistent with this over-extended opinion, the judgments of conviction and sentences of defendants Wilkinson, Bean and Byron are affirmed.

Affirmed.